### Bailey *v.* Turner *et al.*

Fish, C. J.  1. The agreements here involved, though concerning lands, and inferentially in parol, are not unenforceable, when the facts alleged in connection therewith are considered. *Horne* v. *Mullis,* 119 *Ga.* 534 (46 S. E. 663); *Cooley* v. *Craft,* 145 *Ga,* 298 (89 S. E. 204); *Dowling* v. *Doyle,* 149 *Ga.* 727 (102 S. E. 27).
2. The agreements are not unilateral.
3. The agreements are alleged to have been made with the plaintiff by all the defendants; and there is no misjoinder of causes of action, or of parties defendant.
4. The allegations of tender are sufficiently full and specific, especially in view of the alleged declarations of refusal to accept.
5. The petition is not open to the demurrer on the ground that it is sought therein "to alter a contract in writing by an additional agreement resting in parol."
6. The ground of demurrer that the agreements set out in the petition are "not clear and definite, and the same are too vague and uncertain to be enforced by a court of equity," and other grounds in respect of the same point and equally general, are not well taken, because of failure to specify wherein the agreements are defective.
7. Other grounds of demurrer not herein specifically dealt with are not meritorious.
8. It was error to sustain the demurrers and to dismiss the petition.

*Judgment reversed. All the Justices concur.*

No. 1944.  January 13, 1921.

Equitable petition. Before Judge Cobb. Jackson superior court. February 5, 1920.

The action was brought by George W. Bailey, on July 16, 1918, against John C. Turner, the Jefferson Banking Company, and John C. Turner as executor of the will of Mrs. Sarah A. Turner, deceased. So much of the petition as amended, considering the exhibits attached thereto, as is necessary to be considered in passing on the demurrers to it, which were sustained, is in substance as follows: On October 17, 1907, the plaintiff borrowed from Mrs. Turner $1,000, giving to her his promissory note therefor, and to secure the payment of the loan conveyed to her certain described land containing 48.72 acres, at the time receiving from her a bond to reconvey the land to him upon payment of the loan. On January 5, 1911, plaintiff borrowed from Mrs. Turner $7,500, giving her his two promissory notes, one for $5,000, the other for $2,500, and to secure the payment of these notes plaintiff conveyed to her two other described tracts of land, one containing 105-1/4 acres, the other 95-1/10 acres, Mrs. Turner at the time giving him a bond to reconvey these lands upon the payment of the notes. Subsequently plaintiff borrowed from the bank $1,750, giving to it his promissory note for that sum, and to secure its payment assigned to the bank the two bonds for title executed to him by Mrs. Turner. All of these negotiations and transactions were had between the plaintiff and John C. Turner, the agent of his mother, Mrs. Turner, he making the loans to the plaintiff, preparing the security deeds from the plaintiff to Mrs. Turner, the notes from plaintiff to her, the bonds for title from her to plaintiff, and turning over to plaintiff the amount of the loans made by him for Mrs. Turner. John C. Turner acted as the agent of the bank when plaintiff secured the loan from it. Turner at the time was cashier and "general manager" of the bank. He negotiated the loan for the bank to plaintiff, agreed upon its terms, and prepared the assignments of the bonds for title which were executed. The security deeds, the bonds for title, and the assignments on same were all duly recorded.

Plaintiff was in possession of all of the three tracts of land above referred to at the time when all of the transactions above stated occurred, has continuously remained in possession, and is now in possession thereof. At the time the loan transaction with the bank took place, Turner, acting as the agent of Mrs. Turner and also as agent of the bank, agreed with the plaintiff, in order

to keep the interest on the loans paid up and the principal thereof reduced, that plaintiff's tenant should pay each year to Turner the rents from all the lands conveyed in the two security deeds, less the taxes and repairs, it being specially agreed and understood between the plaintiff and Turner as the agent for Mrs. Turner and the bank that the first payments of such rentals should be applied towards the payment of the bank's note for the protection of the indorsers thereon; and in accordance with this agreement the plaintiff's tenant did deliver or pay the yearly rentals of all the lands to Turner as agent for the bank and for Mrs. Turner for the years 1911, 1912, 1913, 1914, and 1915. Turner gave plaintiff credit for such rentals received by him; but such credits were not entered upon the notes as agreed, but were entered by Turner on a book, he agreeing with plaintiff that later on in the settlement as to the notes to be made between them he would credit such rentals in accordance with the agreement. The amount of the rentals received each year by Turner as agent for the bank and of Mrs. Turner is set out, and it is alleged that they aggregated the sum of $10,500. "The defendants agreed to carry said loans so long as they received said rents, and until the said George W. Bailey could reduce the debts and secure new loans, or else find a purchaser for all or a part of said lands at an advantageous and agreed price."

Mrs. Sarah A. Turner died testate in the county where the action was brought, in July, 1914, and John C. Turner qualified as executor of her will, and is now so acting. After the death of Mrs. Turner all parties, recognizing the difficulty of making titles to prospective purchasers of the land, at the instance of John C. Turner acting as agent of the bank and representing the estate of Mrs. Turner, he being her sole heir, entered into an agreement that Turner, acting for the bank and for the estate, would procure an attorney and bring suits on all the notes in the city court for the nominal fee of $25 in each case; that plaintiff would acknowledge service so as to save cost; that judgments should be taken at the first term against the plaintiff; that no delay in the matter should be made in having a settlement of the rentals plaintiff had paid in accordance with his agreement, but that judgments should be taken on the notes as they then stood, and that later, in a final settlement, the rentals should be ac-

counted for and plaintiff given credit therefor; that plaintiff should arrange with the sheriff to charge the small fee of $50 for all his services, instead of his regular fees and commissions; that Turner would buy the lands at sheriff's sale for the plaintiff, "and that the amount of said loans would be counted in the bid or settlement, and that then he would be substituted for the original lender, and would hold the title to secure the amount involved in said bid, and that the old arrangement as to paying the rents over to him each year should continue in force; that the said George W. Bailey could then go forward without difficulty as to titles, and pay on said loans and reduce the same and later secure a new loan, and that said Bailey could make deed to secure the same, and that he would quitclaim, or that he would allow said Bailey to sell any part at a price agreed upon as fair by them both, and that he would release the part or all so purchased." Plaintiff carried out his part of this agreement, setting up no defense to the suits on the notes as to the credits he was entitled to on the notes for rental paid by him; and judgments were rendered in the city court in such suits on September 18, 1915, and executions issued thereon against the plaintiff in this case. Executions were issued on the judgments in favor of "John C. Turner, executor of Mrs. Sarah A. Turner, deceased," and the lands described in the security deeds were brought to execution sales on December 7, 1915. Plaintiff and Turner were present at the sale, and the agreement last mentioned "was again reiterated." "It was generally understood by prospective bidders that the said John C. Turner was selling to perfect the title, and that he would buy the lands instead of offering to lend money to others for this purpose; and for this reason there were but few bidders, and the land was knocked off to the said John C. Turner, executor of Mrs. Sarah A. Turner, at six thousand ($6000) dollars for the one hundred and five and one fourth (105-1/4) acres and 95-1/10 acres sold together, and eleven hundred and fifty ($1150) dollars for the 48.72-acre tract. These bids were far below the real value of said lands. . . After said sale was had it was not intimated or contended by the said John C. Turner that he had bid off said land on his own account, that he did not pay the purchase-price to the sheriff, nor did he demand possession or take possession of said land, but

on the contrary he again assented to the agreement as hereinbefore set out, saying that he was now substituted for the original lender (he being the sole heir of the said Mrs. Sarah A. Turner), and that he would continue to collect the rents as originally agreed, and especially agreed that he would at once apply a sufficient amount of rents now collected, or to be collected, as would extinguish the seventeen hundred and fifty ($1750)-dollar note on which R. L. McElhannon was indorser. That in accordance with said agreement petitioner, George W. Bailey, made efforts to sell said land, and through the said John C. Turner, executor of Sarah A. Turner, did consider an offer, but declined it when submitted by said John C. Turner, executor, as being too low, and in the meantime began to consider negotiating a loan and did finally secure an offer of a loan which would have paid off all debts of defendants. That the matter was held in abeyance, as the sheriff's deed had not been made and delivered, and the title not fully perfected, and said sheriff's deed was not then made and delivered, and no entries were made on the fi. fas. showing a disposition of the sale, and none made prior to February 9th, 1918, and the sheriff who made said sale having on January the 1st, 1916, retired from office. That in accordance with the agreement under which said sale was made the said George W. Bailey was still the owner of said lands, and no claim of ownership was made by John C. Turner nor any one else, and said Bailey continued in possession and control of all of said lands, overlooking the farm, the buildings, roads, etc., superintending and directing his tenant, the said Hartley, to continue to pay rents to John C. Turner, and that under his direction the said tenant paid to John C. Turner the rents for 1916, amounting to sixteen hundred ($1600) dollars, and for the year 1917 the sum of twenty-two hundred ($2200) dollars, and these amounts petitioner avers should have been credited on said debt as agreed."

In February, 1918, plaintiff learned that Turner, as executor, claimed that the sum of $2500 was still due on the loan, and plaintiff at once went to Turner and demanded a statement and settlement; and "the said Turner promised to make him a statement showing all his rents and credits, but stated that it would take some time to do it. That when he failed after due time to make such a statement, he went to him again, and was

again put off by excuses and promises. That petitioner, the said George W. Bailey, become apprehensive at this delay, and secured the promise of a loan amply sufficient to pay all that said Turner might hold against him, and then went again and demanded of said Turner a settlement and offered to pay all that was due, and that to petitioner's amazement he refused to make a settlement, saying: 'I've been studying about this farm proposition from time to time. Lands have advanced, cotton is high, and I do not think it would be right, or that you would now expect me to do this. I would have done it back yonder, but now I ought not be required to do this for nothing. I ought to have something out of it, over and beyond the debt.' That petitioner then offered to pay all that was due, and again demanded a settlement, but that defendant, John C. Turner, cashier and executor as aforesaid, refused to make a settlement and refused to accept the money, and still refused; but petitioner by this suit again asks for a settlement, and continues the tender of the balance due." After this refusal by Turner, petitioner employed counsel, and then for the first time discovered the two sheriff's deeds made to John C. Turner, executor, conveying said lots of land, and the fi. fas. recorded therewith, purporting to show the sale of lands and the disposition of the proceeds. Said deeds were not recorded until February 9, 1918. After J. C. Turner, as executor and as cashier of said bank and in every capacity, refused to settle with petitioner, and after he had declared that he would not carry out said agreement, petitioner proposed to him that he would go and get the money as he arranged for it and pay the amount due on all of said fi. fas., and Turner replied that he would not accept the money and it was useless to bring it, saying that he knew petitioner was in a position to make tender of the actual cash. Petitioner then offered to pay all the indebtedness due by him to the estate of Mrs. Sarah A. Turner, and likewise offered to make actual tender of this amount, but J. C. Turner, executor, again refused, and waived any actual tender, saying that he would not accept any tender, nor would he consider vesting the land to petitioner. Shortly afterward petitioner filed this suit, having no other recourse or remedy. J. C. Turner in all of said transactions acted as the representative of the estate of Sarah A. Turner, he being the duly qualified executor of said estate, and as

such he agreed to make the sale of said property through the sheriff, and said contract as set out was made with him as executor, " and as executor he was to bid in and to hold said land in the estate of said Sarah A. Turner until all of the debts due said estate were paid, and that the rents paid from said land should be credited on said debt, and that when the balance of said debt was paid said land was to be his land and conveyed to him. . . Turner, executor of Sarah A. Turner, now claiming said lands, will attempt to sell the same or change the status so as to defeat petitioner's rights."

The prayers were: (a) That the defendants be enjoined from selling or encumbering the lands. (b) That defendants be required to have a full accounting and settlement with the plaintiff, giving him credit for all the rentals paid. (c) That defendants be required to receive from plaintiff any balance that may be found due them, and that the title of the three tracts of land be decreed to be in the plaintiff, free from any lien or claim of title of defendants. (d) That a sufficiency of the first rentals paid be applied to the satisfaction of the bank's note for $1750, indorsed by R. L. McElhannon. (e) For general relief and process.

Each of the defendants demurred to the petition generally and specially, the demurrers being practically the same. The court sustained all of the demurrers and dismissed the petition. The plaintiff excepted.

*Thomas J. Shackelford* and *Jere S. Ayers,* for plaintiff.
*Pemberton Cooley,* for defendants.